UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ELIZABETH ANN SMITH,

                Plaintiff,

v.                                                     5:17-CV-0488
                                                          (GTS)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                                   OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC       KENNETH R. HILLER, ESQ.
  Counsel for Plaintiff
6000 North Bailey Avenue - Suite 1A
Amherst, NY 14226

U.S. SOCIAL SECURITY ADMIN.                  EMILY M. FISHMAN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II     Special Assistant U.S. Attorney
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## **<u>DECISION and ORDER</u>**

      Currently before the Court, in this Social Security action filed by Elizabeth Ann Smith ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. § 405(g), are Plaintiff's motion for judgment on the pleadings and Defendant's motion for judgment on the pleadings. (Dkt. Nos. 13 and 14.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is granted and Defendant's motion for judgment on the pleadings is denied.

**I.      RELEVANT BACKGROUND**

   **A.      Factual Background**

Plaintiff was born in 1971, making her 42 years old at the alleged onset date and 45 years old at the ALJ's decision. Plaintiff reported completing one year of college. Plaintiff has past work as a group leader at a warehouse distribution center. Generally, Plaintiff alleges disability due to multiple sclerosis ("MS") and a right ankle impairment.

   **B.      Procedural History**

Plaintiff applied for Disability Insurance Benefits on October 1, 2014, alleging disability beginning August 1, 2014. Plaintiff's application was initially denied on February 11, 2015, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff appeared at a hearing before ALJ Gregory M. Hamel on September 8, 2016. On October 5, 2016, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. (T. 15-30.)[1] On March 9, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. 1.)

   **C.      The ALJ's Decision**

Generally, in his decision, the ALJ made the following seven findings of fact and conclusions of law. (T. 20-30.) First, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2018. (T. 20.) Second, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset date. (T. 20.) Third, the ALJ found that Plaintiff's MS and right ankle sprain are severe impairments,

---

[1]      The Administrative Transcript is found at Dkt. No. 8. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

while thyroid disease is not a severe impairment. (T. 20-21.) Fourth, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). (T. 21.) Specifically, the ALJ considered Listings 1.02 (major dysfunction of a joint) and 11.09 (multiple sclerosis). (T. 21.) Fifth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work "but she can only occasionally climb stairs, balance, stoop, kneel, crouch, and crawl; she cannot climb ladders or similar devices, or work in hazardous environments, i.e. heights or dangerous machinery." (T. 22.) Sixth, the ALJ found that Plaintiff is unable to perform any past relevant work. (T. 25.) Seventh, and last, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T. 26.) The ALJ therefore concluded that Plaintiff is not disabled.

### D.     The Parties' Briefings on Their Cross-Motions

#### 1.     Plaintiff's Motion for Judgment on the Pleadings[2]

Generally, Plaintiff makes four arguments in support of her motion for judgment on the pleadings. (Dkt. No. 13, at 15-28 [Pl.'s Mem. of Law].) First, Plaintiff argues that the ALJ failed to conduct a thorough credibility analysis because he failed to address the credibility factors. (*Id*. at 15-19.) Specifically, Plaintiff appears to argue that the ALJ emphasized her daily activities, normal gait, and a lack of evidence of falling episodes noted in the medical reports

---

[2]     The Court notes that Plaintiff's Memorandum of Law is twenty-nine pages long with substantive argument extending through the twenty-eighth page. (Dkt. No. 13 [Pl.'s Mem. of Law].) The Court directs Plaintiff's attention to General Order No. 18(C)(3) (available at Dkt. No. 4) and Northern District of New York Local Rule 7.1(a)(1) indicating that briefs may not exceed twenty-five pages in length, double-spaced, without leave from the Court. A review of the docket does not indicate that Plaintiff requested leave to file excess pages. Regardless, the Court has considered Plaintiff's Memorandum of Law in its entirety. Counsel is, however, reminded to comply with this Court's rules in the future.

while failing to note her good work history.  (*Id*. at 18-19.)  Plaintiff also argues that her simple upkeep of her home and preparation of meals does not suggest that she could work five days a week, eight hours a day.  (*Id*. at 18.)  Plaintiff additionally argues that the ALJ erred in considering Plaintiff's continued smoking because it is unclear what bearing, if any, her continued smoking would have on her disability status.  (*Id*. at 19.)

Second, Plaintiff argues that the ALJ's decision is based on a selective reading of the record.  (*Id*. at 19-22.)  Specifically, Plaintiff argues that the ALJ cherry-picked the evidence pertaining to Plaintiff's gait and reports of falling.  (*Id*. at 21.)  Plaintiff argues that a more accurate finding regarding Plaintiff's unsteady gait may have resulted in a determination that, due to an inability to consistently get in and out of an office, there would be no available employment for Plaintiff.  (*Id*. at 22.)  Plaintiff also argues that this case should be remanded to consider all of the evidence and not just that which supports the ALJ's decision.  (*Id*.)

Third, Plaintiff argues that the ALJ failed to properly weigh the opinion evidence.  (*Id*. at 22-26.)  Specifically, Plaintiff argues that the ALJ failed to give good reasons for not affording controlling weight to the opinion of treating physician Hassan Shukri, M.D.  (*Id*.)  Plaintiff argues that the reasons provided by the ALJ fall short of "good reasons" and that the ALJ did not mention the length of the treatment relationship, frequency of examination, the nature and extent of the treatment relationship, the relevant evidence supporting the opinion, the consistency of the opinion with the record as a whole, and whether Dr. Shukri was a specialist covering the particular medical issues.  (*Id*. at 24-25.)  Plaintiff also argues that MS "is a disease which is known to cause fatigue, yet the ALJ thought that his opinion was worth more than Dr. Shukri's." (*Id.* at 25, 27-28.)

Fourth, Plaintiff argues that the ALJ failed to develop the record regarding Plaintiff's MS and corresponding fatigue. (*Id*. at 26-28.) Specifically, Plaintiff argues that, because the ALJ found that MS is a severe impairment, the ALJ should have obtained a consultative examination "if he did not believe the opinion of Dr. Shukri." (*Id*. at 27.) Plaintiff argues that the ALJ's choices were to make a decision in line with Dr. Shukri or to formulate a lay opinion based on the medical evidence and that the ALJ chose to do the latter, substituting his own opinion for that of Dr. Shukri. (*Id*. at 27-28.) Plaintiff also argues that the ALJ did not appear to consider the fatiguing nature of MS at all and that this is error because an RFC incorporating rest periods could have resulted in a finding of disabled, based on the VE's testimony that being off-task for breaks two hours out of a work day would preclude employment. (*Id*. at 28.) Plaintiff argues that, on remand, the ALJ should clarify whether fatigue was truly considered and, if necessary, get clarification from Dr. Shukri on his opinion and/or obtain a consultative examination. (*Id*.)

### 2.     **Defendant's Motion for Judgment on the Pleadings**

Generally, Defendant makes four arguments in support of her motion for judgment on the pleadings. (Dkt. No. 14, at 3-19 [Def.'s Mem. of Law].) First, Defendant argues that substantial evidence supports the ALJ's RFC finding. (*Id*. at 7-11.) Specifically, Defendant argues that, contrary to Plaintiff's argument regarding cherry-picking or selective review of the evidence, the ALJ fully acknowledged the various subjective complaints and positive clinical findings throughout the relevant period. (*Id*. at 7-10.) Defendant notes that some of the treatment notes that Plaintiff faults the ALJ for not mentioning explicitly were dated prior to the start of the relevant period. (*Id*. at 7, n. 5.) Defendant also argues that while the ALJ was not required to specifically discuss every complaint and clinical finding in the record, Plaintiff cannot point to any significant evidence that the ALJ ignored. (*Id*. at 10.) Defendant additionally argues that,

5

far from disregarding the relevant clinical findings throughout the record, the ALJ explained that he accounted for these findings in the RFC.  (*Id*. at 10-11.)

Second, Defendant argues that the ALJ provided good reasons for discounting Dr. Shukri's opinion, which was not entitled to controlling weight.  (*Id*. at 11-13.)  Specifically, Defendant argues that, while the ALJ recognized that Dr. Shukri's opinions (that Plaintiff was unable to work) were not entitled to any special deference, the ALJ also properly evaluated all evidence in the record to determine the extent to which these opinions were supported as directed by Social Security Ruling ("SSR") 96-5p.  (*Id*. at 11-12.)  Defendant argues that, based on the substantial evidence discussed in the ALJ's decision (including the normal mental status findings and the absence of other significant neurological findings on examination), the ALJ reasonably concluded that Dr. Shukri's opinions appeared to be based on Plaintiff's subjective complaints of fatigue, rather than any objective clinical findings.  (*Id*. at 12.)  Defendant also argues that remand is not warranted for a slavish recitation of each and every factor under 20 C.F.R. §§ 404.1527(c)(1)-(6).

Third, Defendant argues that the ALJ properly considered Plaintiff's subjective allegations regarding the intensity, persistence, and limiting effects of her symptoms.  (*Id*. at 13-16.)  Specifically, Defendant argues that the ALJ properly evaluated Plaintiff's alleged symptomology in accordance with the regulatory framework and in relation to the objective medical evidence, which contained generally benign findings.  (*Id*. at 13-14.)  Defendant notes that the ALJ's decision is subject to SSR 16-3p (superseding SSR 96-7p) which makes reference not to a claimant's credibility, but rather to the consistency of her allegations with the record as a whole.  (*Id*. at 13, n. 7.)

Defendant also argues that the ALJ properly considered Plaintiff's wide-ranging activities of daily living (which the Commissioner's regulations and rulings recognize as an important indicator of a claimant's functioning) and Plaintiff's receipt of unemployment benefits during a portion of the time she claimed to be disabled for Title II purposes. (*Id*. at 14-15.) Defendant additionally argues that, while recognizing that it was not dispositive, the ALJ properly noted that Plaintiff continued to smoke throughout the relevant period, despite being specially counseled to quit by her treating primary care physician. (*Id*. at 15.) Defendant argues that there was no error in the ALJ considering Plaintiff's continued smoking, against medical advice, as one of many factors in the analysis of how limited she was by her symptoms. (*Id*.) Defendant also argues that work history is just one of many factors that the ALJ is instructed to consider in weighing the credibility of claimant testimony. (*Id*. at 16.)

Fourth, Defendant argues that remand is not warranted to obtain an additional medical opinion. (*Id*. at 16-19.) Specifically, Defendant argues that remand to secure another medical opinion is not required where the record contains sufficient evidence from which the ALJ can assess the RFC. (*Id*. at 17-18.) Defendant also argues that the Commissioner's regulations do not specifically require either recontacting Dr. Shukri or ordering a consultative examination, but rather provide the adjudicator significant discretion to determine whether the existing evidence of record is sufficient to make a disability determination. (*Id*. at 18-19.) Defendant argues that the ALJ based his decision on a fully developed record with years' worth of treatment notes containing completely normal mental status findings and minimal evidence of gait disturbances or other neurological deficits. (*Id*. at 19.) Defendant also argues that the ALJ properly relied on Plaintiff's testimony and statements regarding her functionality and that Plaintiff cannot point to any obvious gap in the record warranting further development. (*Id*.)

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of

the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.     Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### III. ANALYSIS

#### A. Whether the ALJ Properly Considered the Opinion Evidence and Other Evidence of Record When Determining Plaintiff's RFC

After careful consideration, the Court answers this question in the negative for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 13, at 19-26 [Pl.'s Mem. of Law].) To those reasons, this Court adds the following analysis.

RFC is defined as "'what an individual can still do despite his or her limitations . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.'" *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)). "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee*, 631 F. Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a)). "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" *Hendrickson v. Astrue*, 11-CV-0927, 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting SSR 85-15, 1985 WL 56857, at *8).

"An ALJ should consider 'all medical opinions received regarding the claimant.'" *Reider v. Colvin*, 15-CV-6517, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (quoting *Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005)). "The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any

competent medical opinion." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (citing *Burgess v. Astrue*, 537 F.3d 117, 131 (2d Cir. 2008)).  In assessing a plaintiff's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of social security disability.  20 C.F.R. §§ 404.1513a, 404.1527(e); *see also Frey ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Little v. Colvin*, 14-CV-0063, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims.  As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted).  The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence."  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

  The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. § 404.1527(c).  "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'"  *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 128).  However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'"  *Id.* (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)).

"Where an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation." *Blinkovitch v. Comm'r of Soc. Sec.*, 15-CV-1196, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017), *Report and Recommendation adopted by* 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (citing *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013)). After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129). "The failure to provide 'good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.'" *Id*. (quoting *Burgess*, 537 F.3d at 129-30). The factors for considering opinions from non-treating medical sources are the same as those for assessing opinions from treating sources, with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant. *See* 20 C.F.R. § 404.1527(c)(1)-(6).

On July 15, 2015, treating neurologist Dr. Shukri completed a physical RFC questionnaire and indicated that he had seen Plaintiff every three-to-six months since 2004. (T. 488-90.) Dr. Shukri indicated a diagnosis of MS with a poor prognosis. (T. 488.) He noted that Plaintiff had chronic pain/paresthesia and that treatment included Tysabri infusions and Topamax (which he noted can cause drowsiness). (*Id*.) Dr. Shukri did not fill out the functional assessment or capacity portions of the questionnaire, indicating that his office did not do such assessments. (T. 488-90.) At the end of the questionnaire, Dr. Shukri opined that Plaintiff was not capable of sustaining full-time work (8 hours a day, 5 days a week) and that her symptoms/limitation had been present as early as June 3, 2004. (T 490.)

The ALJ afforded limited weight to Dr. Shukri's July 15, 2015, opinion that Plaintiff is not able to sustain full-time work (noting that Dr. Shukri repeated this opinion in treatment notes on August 12, 2015, indicating that Plaintiff could not sustain any job due to fatigue). (T. 25, 490, 506, 525.) The ALJ stated that this opinion appeared to be based on Plaintiff's subjective allegations rather than an objective clinical assessment in the professional opinion of the treatment provider and noted that Dr. Shukri refused to complete the evaluation form, only checking the box at the end that Plaintiff was unable to work. (*Id.*) The ALJ also noted that the issue of whether a claimant is disabled is a determination reserved to the Commissioner. (*Id.*)

Plaintiff argues the ALJ failed to properly weigh the opinion evidence and that the ALJ's decision is based on a selective reading of the record. (Dkt. No. 13, at 19-26 [Pl.'s Mem. of Law].) The Court finds these arguments persuasive.

While Dr. Shukri's opinion touches on an issue reserved to the Commissioner and contains nothing in the way of functional limitations, it is the only examining opinion of record and indicates a treatment relationship (of over ten years) with a physician specializing in neurology. Furthermore, Dr. Shukri also noted a poor prognosis, chronic pain/paresthesia, and treatment including Tysabri injections and Topamax (noted by Dr. Shukri to possibly cause drowsiness), which the ALJ did not mention in his analysis of this opinion. (T. 488.)

The only other functional assessment of record was made by a Single Decision Maker at the initial determination level in February 2015, indicating an RFC for a range of light work with occasional climbing of ramps, stairs, ladders, ropes, and scaffolds. (T. 65-67.) Although the RFC determination is clearly within the ALJ's purview given, given the complex neurological nature of Plaintiff's impairment, it is unclear how the ALJ reached his RFC determination without any functional assessment from a qualified medical professional. There is a difference

between analyzing medical records to determine what the weight of the evidence supports and interpreting raw medical data that would require the expertise of a physician or other trained medical source; the ALJ is precluded from doing only the latter. *See Hanson v. Comm'r of Soc. Sec.*, 15-CV-0150, 2016 WL 3960486, at *9 (N.D.N.Y. June 29, 2016), *Report and Recommendation adopted by* 2016 WL 3951150 (N.D.N.Y. July 20, 2016) (noting that, while it is impermissible for an ALJ to interpret "raw medical data" and substitute his own opinion for that of a medical source, it is within the ALJ's power to resolve conflicts in the medical record).

Given the complex nature of an impairment such as relapsing-remitting MS and Plaintiff's longstanding history of the disease including an exacerbation noted in late 2014 by her treating neurologist Dr. Shukri, the lack of a functional assessment of Plaintiff's physical and mental limitations in this record indicates that the ALJ may have interpreted raw medical data without the expertise of a trained medical source. (T. 458-59, 545-46.) This is most apparent in the ALJ's summary of the February 2016 treatment records, in which the ALJ noted normal motor strength, coordination, and gait and that an "MRI showed a stable number and distribution of white matter lesions compared to the June 2015 study" with "no evidence of demyelination." (T. 24, 515.) Without a functional assessment from an examining or treating physician opining on Plaintiff's limitations as they relate to these examination findings and the MRI result (which was noted to be compatible with the history of MS and actually indicated no evidence of *active* demyelination), this Court cannot determine how the ALJ concluded that Plaintiff had the specific functional limitations included in the RFC. (T. 515.) Therefore, in reviewing the evidence of record, the Court is unable to determine whether the ALJ's conclusion that Plaintiff is able to perform a modified range of sedentary work is supported by substantial evidence. *See Booker v. Astrue*, 07-CV-0646, 2011 WL 3735808, at *5 (N.D.N.Y. Aug 24, 2011) ("The crucial

factors in an ALJ's decision must be set forth in sufficient detail as to enable meaningful review by the court.") (citing *Ferraris*, 728 F.2d at 587); *Hickman ex rel. M.A.H. v. Astrue*, 728 F. Supp. 2d 168, 173 (N.D.N.Y. 2010) ("The ALJ must 'build an accurate and logical bridge from the evidence to [his] conclusion to enable a meaningful review.'") (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)).

For the above reasons, the Court finds that the ALJ's consideration of the opinion evidence and the resulting RFC cannot conclusively be said to be supported by substantial evidence. Remand is therefore necessary on this basis.

### B.    Whether the ALJ Properly Developed the Record

After careful consideration, the Court answers this question in the negative for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 13, at 26-28 [Pl.'s Mem. of Law].) To those reasons, this Court adds the following analysis.

Although the claimant has the general burden of proving that he or she has a disability within the meaning of the Social Security Act, "'the ALJ generally has an affirmative obligation to develop the administrative record'" due to the non-adversarial nature of a hearing on disability benefits. *Burgess*, 537 F.3d at 128 (quoting *Melville*, 198 F.3d at 52); citing *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002), *Butts v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004), *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000)). "'It is the ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits.'" *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009)). An "ALJ must make every reasonable effort to help [the claimant] obtain medical reports from the claimant's medical sources so long as permission is

granted to request such reports." *Hart v. Comm'r*, 07-CV-1270, 2010 WL 2817479, at *5 (N.D.N.Y. July 16, 2010) (quoting 20 C.F.R. § 404.1512(d) (internal quotation marks omitted)).

"The ALJ has discretion to order a consultative examination to further develop the evidentiary record." *Cox v. Astrue*, 993 F. Supp. 2d 169, 177 (N.D.N.Y. 2012) (citing *Serianni v. Astrue*, 07-CV-250, 2010 WL 786305, at *5 (N.D.N.Y., Mar. 1, 2010)); *see also* 20 C.F.R. 404.1517. "'Several courts have held . . . that in fulfilling the duty to conduct a full and fair inquiry, an ALJ is required to order a consultative examination where the record establishes that such an examination is necessary to enable the ALJ to render a decision.'" *Cox*, 993 F. Supp. 2d at 177 (quoting *Serianni*, 2010 WL 786305, at *5). "Generally, the ALJ should order a consultative examination when 'a conflict, inconsistency, ambiguity, or insufficiency in the evidence must be resolved.'" *Id.*

Plaintiff argues that the ALJ failed to develop the record regarding Plaintiff's MS and corresponding fatigue. (Dkt. No. 13, at 26-28 [Pl.'s Mem. of Law].) The Court finds this argument persuasive.

As indicated above in Section III.A. of this Opinion and Order, it is unclear to the Court how the ALJ reached his RFC determination. The ALJ afforded limited weight to the opinion of treating neurologist Dr. Shukri (an opinion which contained no functional assessment) and does not appear to have relied on the assessment of the non-medical Single Decision Maker at the initial determination level (which, in any event, would have been improper). (T. 25, 65-67, 488-90.) In light of the complex and progressive nature of Plaintiff's longstanding relapsing-remitting MS, the Court finds that the ALJ erred in failing to appropriately develop the record with regard to the limitations caused by this impairment and its symptoms. This failure to develop the record (particularly the failure to obtain a functional assessment of Plaintiff's

limitations either from a treating physician or through a consultative examination) is harmful error because it negatively affected the ALJ's analysis, based on the absence of a functional assessment on which the ALJ could rely when determining Plaintiff's RFC.

For the reasons above, the Court finds that the ALJ failed to fully develop the record. Remand is therefore necessary on this basis. On remand, the ALJ should make reasonable efforts to obtain a functional opinion of Plaintiff's limitations.

### C. Whether the ALJ Properly Considered Plaintiff's Credibility

Because remand is necessary and the ALJ will be required to address the deficiencies in the evaluation of the opinion evidence and development of the record, the Court need not reach a finding regarding whether the ALJ's credibility finding is supported by substantial evidence; the ALJ should reconsider this finding on remand.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is **GRANTED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 14) is **DENIED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **VACATED** and this case is **REMANDED**, pursuant to Sentence Four of 42 U.S.C. § 405(g) for proceedings consistent with this Decision and Order.

Dated: April 5, 2018
       Syracuse, New York

                                                 Hon. Glenn T. Suddaby
                                                 Chief U.S. District Judge